UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
                                                                        :
FRED SPAGNOLA, individually, and on behalf of all                       :
those similarly situated,                                               :
                                                                        :
                            Plaintiff,                                  :
                                                                        :     06 Civ. 9960 (HB)
         - against -                                                    :
                                                                        :     <u>OPINION & ORDER</u>
THE CHUBB CORPORATION, FEDERAL                                          :
INSURANCE COMPANY, GREAT NORTHERN                                       :
INSURANCE COMPANY, JOHN D. FINNEGAN, and,                               :
THOMAS F. MOTAMED,                                                      :
                                                                        :
                            Defendants.                                 :
                                                                        :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

Fred Spagnola ("Plaintiff") brings this putative class action for breach of contract against The Chubb Corporation ("Chubb"), Federal Insurance Company ("FIC"), Great Northern Insurance Company ("Great Northern"), John D. Finnegan ("Finnegan"), and Thomas F. Motamed ("Motamed") (collectively, "Defendants").

The Amended Complaint[1] alleges five separate causes of action: (1) breach of contract; (2) violation of N.Y. INSURANCE LAW § 3425; (3) violation of N.Y. GENERAL BUSINESS LAW § 349; (4) unjust enrichment; and (5) injunctive relief. Defendants have moved to dismiss Plaintiff's complaint against all Defendants pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons that follow, Defendants' Motion to Dismiss is GRANTED in its entirety.

### I.  FACTUAL BACKGROUND

Plaintiff and his wife purchased an extended replacement cost homeowner's insurance policy ("Policy")[2] issued by Defendant Great Northern for a one-year term in 2001.[3] Compl.

---

[1] Plaintiff has amended his complaint on at least two occasions since this case was first removed from state court—November 30, 2006 and December 29, 2006.

[2] The Masterpiece Policy offers three different types of coverage: (1) an "extended replacement cost" policy where the insurer pays the cost of reconstruction even if that cost exceeds the insured's amount of coverage; (2) a "verified replacement cost" policy where the insurer pays only the reconstruction cost up to the specified amount of coverage; and (3) a "conditional replacement cost" policy where the insurer pays only a portion of the reconstruction costs which cannot exceed the amount of coverage. Policy at B-1 and B-2.

¶11.  The Policy states that Great Northern would pay the costs of reconstruction "even if this amount is greater than the amount of coverage shown in [Plaintiff's] policy."  Policy at B-1.  In light of fluctuating "reconstruction costs,"[4] the Policy provides that, with the insured's consent, the insurer may change the coverage amount "when appraisals are conducted and when the policy is renewed, to reflect current costs and values."  Id.  Thereafter, for five consecutive years, and with knowledge that the premium was raised in each of those years, Plaintiff paid the sought for premium, and the Policy was renewed.

Defendant Great Northern is one of several insurance companies within the "Chubb Group" of insurance companies, and the company who issued Spagnola's Masterpiece Policy.  Compl. ¶11.  The Chubb Corporation, the overarching parent of the Chubb Group and the companies within, is named as a Defendant in this case.  Id. ¶12.  Plaintiff alleges that the Chubb Corporation established uniform contract language and practices that were of "material assistance in the perpetration of the wrongs" complained of and that "participation in the creation of contracts and practices with respect to their implementation, make[] it a party to the policies between [Plaintiff and Defendant Great Northern]."  Id. ¶¶18, 20.  Defendant FIC is the largest of the insurance companies within the Chubb Group, and manages the other companies.  Id. ¶13.  Plaintiff asserts that there is significant overlap between senior management of the Chubb Corporation, FIC and Great Northern, and that the three share the same principal place of business.  Id. ¶¶13, 14.

Plaintiff also names two executives individually—John D. Finnegan, the President, CEO and Director of Chubb, Chairman of the Board and CEO of FIC, and Thomas F. Motamed, Vice Chairman and COO of Chubb, and President of FIC.  Plaintiff alleges that each has participated, aided and abetted or conspired in the wrongs alleged in the Complaint.  Id. ¶¶21-22.

## II.  STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the movant must establish that the plaintiff has failed to "state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  In ruling on a Rule 12(b)(6) motion, this Court must construe all factual allegations in the complaint in favor of the non-moving party.  See Krimstock v. Kelly, 306 F.3d

---

[3] During oral argument, Plaintiff noted that he purchased Great Northern's insurance policy through a broker.  This information is irrelevant to the disposition of this motion.

[4] According to the Policy, the "reconstruction cost" is defined as the "amount required at the time of loss to repair or rebuild the house whichever is less, at the same location, with the same quality of materials and workmanship which existed before the loss."  Policy at B-1.  Such costs will vary to the extent that improvements have been made on the home (Id.) and, logically, as the costs of construction materials fluctuate (*e.g.,* wood, labor, etc.).

40, 47-48 (2d Cir. 2002). A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004) (quoting McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004)). The court's consideration is normally limited to facts alleged in the complaint, documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken. Leonard F. v. Israel Discount Bank, 199 F.3d 99, 107 (2d Cir. 1999) (citation omitted). However, "even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (citations and internal quotations omitted).[5]

### III.  DISCUSSION

I address Plaintiff's allegations against Defendant Great Northern first, followed by a discussion of the remaining corporate and individual Defendants.

### Claims Against Great Northern

    a.  Count I: Breach of Contract

The Policy explicitly addresses the "Amount of Coverage":

> ***With your consent***, ***we may change this amount*** when appraisals are conducted and ***when the policy is renewed to reflect current costs and values***.
>
> During the policy period, the amount of coverage will be increased daily to reflect the current effect of inflation. At the time of a covered loss, your amount of house coverage will include any increase in the United States Consumer Price Index from the beginning of the policy period. . .

Policy at B-1 (emphasis added). With respect to "consent" and "renewal," the insurer (or its agent):

> . . . may offer to renew this policy at the premiums and under the policy provisions in effect at the date of renewal. We can do this by mailing you a ***bill for the premium. . . along with any changes in the policy provisions or the amounts of coverage***. If you do not accept our offer, the policy will automatically terminate at the end of the current policy period. ***Failure to pay the required renewal premium when due shall mean that you have not accepted our offer***.

Id. at Y-1 (emphasis added).

Plaintiff claims that Great Northern breached the terms of the Policy by improperly

---

[5] The Court has reviewed the Complaint, all moving papers, opposition, and exhibits, including Policy forms.

increasing coverage (and premiums) (1) without the consent of the insured, (2) in excess of the Consumer Price Index ("CPI"), and (3) in violation of the Policy's stated adherence to New York Insurance Law § 3425.[6]  Compl. ¶¶103-13.  In the alternative, Plaintiff states that the Policy is a contract of adhesion and, therefore, to the extent its terms are "ambiguous," New York law requires construction in Plaintiff's favor.  Id. at ¶¶114-15; Pl's Opp. to Defs' Mot. to Dismiss at 10-11.  Defendants, in turn, argue that Plaintiff's claim fails for at least three reasons: (1) the alleged contractual terms on which he sues do not exist; (2) his current objection to past premiums are barred by his repeated, voluntary payment of them and (3) the filed rate doctrine bars recovery.  Defs' Mem. in Support of Mot. to Dismiss at 8-9.

      Plaintiff's first contention, that Defendant breached the terms of the insurance Policy is unsustainable because the contract terms upon which he sued do not exist and the Policy terms which do address his claims are not ambiguous. This Court declines to "read an ambiguity into [the Policy] because one of the parties [has] become[] dissatisfied with its position under the plain terms of the agreement."  Yucyco, Ltd. v. Republic of Slovenia, 984 F. Supp. 209, 222 (S.D.N.Y. 1997) (citation omitted). "Clear and unambiguous terms should be understood in their plain, ordinary, popular and nontechnical sense."  National Union Fire Ins. Co. v. Cohen, No. 92-CV-9500 (LMM), 1994 U.S. Dist. LEXIS 18456, *13 (S.D.N.Y. Dec. 23, 1994) (citation omitted).  The Policy explicitly notifies the insured that (1) Great Northern may increase coverage and premiums annually (Policy at B-1), (2) the amount of such increases will "reflect current costs and values," (Id.) (defined as the "reconstruction costs" on the same page, not the CPI (Id.)), (3) Great Northern will provide an annual bill for the premium with any changes in policy provisions or coverage (Id. at Y-1), (4) payment of the annual premium reflects the insured's consent (Id.), and (5) the CPI applies to interim period adjustments (Id. at B-1).

      Further, Plaintiff's breach of contract claim is barred by the voluntary payment doctrine which "bars recovery of payments voluntarily made 'with full knowledge of the facts.'" Newman v. RCN Telecom Servs., Inc., 238 F.R.D. 57, 79 (S.D.N.Y. 2006) (noting that the doctrine would bar recovery by internet subscribers who, alleging slower than advertised service, continued to pay for and use the (citations omitted); Gimbel Bros. v. Brook Shopping Ctrs., Inc., 499 N.Y.S.2d 435, 439 (N.Y. 1986) ("When a party intends to resort to litigation in order to resist paying an unjust demand, that party should take its position at the time of the demand, and litigate the issue before, rather than after, payment is made."). See also CJS Payment § 104

---

[6] The Court will address this assertion in the following section.

4

(West 2007) ("Except where otherwise provided by statute, a person generally cannot recover money he or she has voluntarily paid, with full knowledge of all the relevant facts, and without any unjust enrichment, fraud, duress, or extortion . . . This rule exists to protect persons who have had unsolicited "benefits" thrust upon them, and places upon a party who wishes to challenge the validity or legality of a bill for payment the obligation to challenge the bill either before voluntarily making payment, or at the time of voluntarily making payment."). Defendants correctly point out that Plaintiff had full knowledge of the facts regarding coverage and premium at the time of his first renewal in 2002 and yet continued (without objection)[7] to pay increased premium amounts on each of the five succeeding anniversary dates. Plaintiff could have elected, at any time, not to pay the premium and, thereby terminate coverage with Great Northern, and could have searched for a new provider within a well-developed insurance market. It is a little late now, after he has enjoyed the benefits and protections of Great Northern's coverage for more than five years, to come by and successfully challenge the propriety of such coverage. Plaintiff's claim for breach of contract must be dismissed. I need not address Defendants' argument in support of dismissal on the basis of the filed rate doctrine.

      b. *Count II: Violation of N.Y. Insurance Law § 3425*

Plaintiff argues that Great Northern violated N.Y. INSURANCE LAW §§ 3425 (d)(1) and (e) because, in his view, pursuant to those sections, the Defendant (1) could not condition the renewal of the policy on the insured's acceptance of the increased premiums for the first three years of the Policy (§ 3425(e)) and (2) thereafter, was required to issue a written notice explaining the reasons for the conditional renewal (§ 3425(d)(1)). Defendants argue that §§ 3425 (d)(1) and (e) are inapplicable to Plaintiff's extended replacement policy.

N.Y. Insurance Law § 3425 (e) states, in relevant part, with respect to personal lines of insurance (of which homeowner's insurance is one type), that "no notice of nonrenewal or conditional renewal of a covered policy shall be issued to become effective during the required policy period[8] unless it is based upon a ground for which the policy could have been cancelled." N.Y. Insurance Law § 3425 (d)(1) states, in relevant part, that the "specific reason or reasons for nonrenewal or conditioned renewal shall be stated in or shall accompany the notice." The drafters intended the Section to "regulate insurers' efforts to eliminate policyholders, so as to

---

[7] The Complaint does not allege, nor did Plaintiff's counsel offer at oral argument any facts to indicate that Plaintiff made any affirmative objection(s) to the Policy before filing this suit.
[8] N.Y. Insurance Law § 3425 (a)(2)(C)(7) defines the "required policy period" for personal lines of insurance as "three years from the date as of which a covered policy is first issued or is voluntarily renewed."

protect the public from having their policies routinely cancelled for improper reasons, such as filing claims based on legitimate losses." Iaia v. Graphic Arts Mut. Ins. Co., 670 N.Y.S.2d 683, 684 (N.Y. 1997).

While case law provides little guidance on these two subsections from N.Y. Insurance Law, Defendants direct the Court's attention to two N.Y. Insurance Department opinions.[9] Each supports the proposition that Section 3425 is inapplicable to this particular policy. The first answers the question: can an insurer renew a homeowner's policy with a six-month term despite the Section's required period of three years? The Department answered affirmatively writing that "required policy periods . . . do not have any effect upon the ability of an insurer to renew policies with a premium change." Op. re: Rate Changes and N.Y. Insurance Law § 3425, Office of the General Counsel, N.Y. State Insurance Dep't, Jul. 23, 2003. Plaintiff's attempt to distinguish the instant case from the facts presented to the Insurance Department fails. While it may not present the *actual* increase in premium, like the policy in the opinion, Plaintiff's Policy explicitly indicates that coverage (and premiums) will increase annually to "reflect current costs and values." Policy at B-1. An extended replacement cost policy is designed to keep pace with inflation and prevent underinsurance, and therefore, *does not, and for the insured's protection, cannot specify* the exact amount of coverage or premium increase at the time of the Policy's renewal.[10] Plaintiff points to no authority to the contrary.

Second, on the issue of notice, the Department has opined that no notice was required "when a change of limit is the result of the application of an inflation guard. . . .because the

---

[9] Plaintiff contends such opinions have no precedential value and may not be relied upon by the Court but I see and he cites no authority which would preclude consideration of an "informal" opinion issued by the New York Insurance Department. Preferred Medical Imaging v. Liberty Mutual Fire Ins. Co., 815 N.Y.S.2d 496 (Suffolk Dist. 2006) and In the Matter of Park Radiology, P.C., 2 Misc.3d 621, 2003 Slip Op. 23910 (Rich. Co. 2003) are distinguishable from the instant case because, as Defendants point out, significant contrary case law existed and was presented to contradict the informal opinion. Plaintiff presents no authority to the contrary. Neither case forwards Plaintiff's sweeping statement that informal opinions carry "no precedential value" and are irrelevant to the decision at bar. Further, Plaintiff contends that this Court should treat Department of Insurance opinions like Securities Exchange Commission ("SEC") "no action" letters. Courts in this Circuit have routinely held that "[w]hile no-action letters lack precedential value**,** courts routinely consider the SEC's opinion and may or may not chose to rely on them." Gryl v. Shire Pharms. Group PLC, No. 00-CV-9173(HB), 2001 U.S. Dist. LEXIS 13371, at *11 n.9 (S.D.N.Y. Aug. 30, 2001).

[10] See Bruce Mohl, Being Underinsured Can Really Hit Home, Boston Globe, Jun. 17, 2001, at GL-CONSUMER-COL (attributing the pervasive problem of underinsurance, in part, to a "failure to properly account for construction-cost inflation," "consumers [who] confuse the insured value of a home with its market value," and praising extended replacement coverage [by name] for meeting a particular need); Hundreds of Claims Adjusters Pour Into Florida to Assess Charley's Damage, BESTWIRE, Aug. 19, 2004 (discussing the problem of underinsurance in the wake of hurricane Charley and how it may not be a problem because "most homeowner's insurance has inflationary coverage and once insurers set the price, they automatically increase it every year").

increase in coverage is required by the terms of the policy [and] the premium increase is tied to an increase in coverage amount." Op. re: Conditional Renewal Notices, Office of the General Counsel, N.Y. State Insurance Dep't, Apr. 8, 2002.  Plaintiff's objection misunderstands the underlying purpose of section 3425 and the protection afforded by the extended replacement cost policy. Therefore, Plaintiff's section 3425 claim fails as a matter of law.

### c. Count III:  Deceptive Trade Practices under N.Y. Gen. Bus. Law § 349

N.Y. Gen. Bus. Law § 349 (a) states that "deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state are hereby declared unlawful."  To state a claim under N.Y. Gen. Bus. Law § 349, a plaintiff must allege (1) the act or practice was consumer-oriented, (2) the act or practice was misleading in a material respect, and (3) the plaintiff was injured as a result.  Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2002).  Plaintiff claims that Great Northern's alleged conduct in raising premiums and coverage "on specious grounds in violation of its duty under law and the form policy is 'misleading in a material way' to consumers."  Compl. ¶90; Pl's Mem. in Opp. to Defs' Mot. to Dismiss at 23. Not surprisingly, Defendants have a different view and argue that Plaintiff's claim here fails on four grounds: (1) Plaintiff has not adequately alleged the elements of a Section 349 claim; (2) the claim is barred by the voluntary payment doctrine; (3) the claim is barred by the filed rate doctrine; and (4) the claim is barred by the statute of limitations.

Turning to Plaintiff's Section 349 claim and Defendants' contention that this claim is unsustainable, I agree.   Plaintiff has failed to allege facts sufficient to support a claim that Great Northern's Policy was "misleading in a material respect," secondly, that he or any other member of the putative class was "injured" as a result of Great Northern's Policy, and, finally, as required by Section 349, that Great Northern's coverage and premium increases reflect a uniform, "consumer-oriented practice."   Therefore, this claim must fail.  I need not address Defendants' three additional arguments in support of dismissal of Plaintiff's Section 349 claim.

### d. Count IV: Unjust Enrichment

Defendants argue that Plaintiff's unjust enrichment claim fails because (1) the existence of an express contract bars this quasi-contractual claim and (2) the voluntary payment and filed rate doctrines also bar this claim.  Plaintiff does not dispute that a valid contract claim will bar unjust enrichment, but instead, pleads unjust enrichment as an alternative to his contract claim.

Because Plaintiff does not challenge the overall validity of the insurance policy, but rather, particular provisions, his claim for unjust enrichment fails. It is well established that a plaintiff

"clearly may not recover under a theory of unjust enrichment" where a "valid and enforceable written [contract] govern[s] the particular subject matter of [the] case." Beth Israel Medical Ctr. v. Horizon Blue Cross & Blue Shield, 448 F.3d 573, 587 (2d Cir. 2006) (dismissing claim for unjust enrichment). In the presence of an insurance contract, courts in this Circuit have regularly dismissed insured's claims for unjust enrichment. See, e.g., Id.; Page Mill Asset Mgmt. v. Credit Suisse First Boston, Corp., No. 98-CV-6907(MBM), 2000 U.S. Dist. LEXIS 3941, *28-29 (S.D.N.Y. Mar. 29, 2000) ("[B]ecause unjust enrichment is a quasi-contractual remedy, 'the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery . . . for events arising out of the same subject matter.'") (citation omitted); Goldman v. Metropolitan Life Ins. Co., 841 N.E.2d 742, 747 (N.Y. 2005) ("Given that the disputed terms and conditions fall entirely within the insurance contract, there is no valid claim for unjust enrichment."). This claim is dismissed.

  e. *Count V: Injunctive Relief*

Plaintiff does not assert a claim under Count V. Instead, Pl. "repeats and realleges the prior allegations" and states that "[t]he ongoing misconduct warrants the imposition of injunctive relief." Compl. ¶¶133-34. However, an injunction is a *remedy* and not a separate cause of action sustainable on its own. Lekki Capital Corp. v. Automatic Data Processing, Inc., No. 01-7421, 2002 U.S. Dist. LEXIS 8538, *11 (S.D.N.Y. May 13, 2002). Count V is dismissed.

## Claims Against The Other Named Defendants

Because Plaintiff has not shown on the face of the Complaint facts or allegations which would lead to any cognizable recovery under the law against Great Northern, the signatory to the insurance contract, the Court need not reach the question of agency theory or veil piercing for the other corporate and individual defendants.[11]

## IV.  CONCLUSION

For the foregoing reasons, I hold that Plaintiff has not stated a claim for which relief may

---

[11] Plaintiff also alleges that Defendants have each "aided, abetted, and conspired with one another in all of the practices complained of" and that "[t]he purpose of the conspiracy is to secure greater premiums than otherwise would be obtained, and actual concert is demonstrated . . . respecting uniform acts, practices, documents, breaches of contract, violations of New York Insurance Law, and deceptive practices." Compl. ¶ 89. However, other than this single reference in the Complaint, Plaintiff alleges no facts to support a violation or stated cause of action for common law fraud, conspiracy or aiding and abetting under New York law or pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. § 1961 et seq. Consequently, this Court need not explore Plaintiff's musings in this area.

be granted, and, therefore, pursuant to Fed. R. Civ. P. 12(b)(6), this case is dismissed in its entirety against all Defendants.

The Clerk of the Court is instructed to close this matter and remove it from my docket.

**IT IS SO ORDERED.**

New York, New York
March 2͟9͟, 2007

_____
U.S.D.J.

9